**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MALKA RAUL,<br><br>               Plaintiff,<br><br>   v.<br><br>STERLING BANCORP, JACK KOPNISKY, RICHARD O'TOOLE, JOHN P. CAHILL, NAVY E. DJONOVIC, FERNANDO FERRER, ROBERT GIAMBRONE, MONA ABOELNAGA KANAAN, JAMES J. LANDY, MAUREEN MITCHELL, PATRICIA M. NAZEMETZ, RALPH F. PALLESCHI, and WILLIAM E. WHISTON,<br><br>               Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Malka Raul ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Sterling Bancorp ("Sterling" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Sterling and the Defendants.

**SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against Sterling and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with Webster Financial Corporation ("Webster") (the "Proposed Transaction").

2. On April 18, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Webster. Pursuant to the terms of the Merger Agreement the Company's shareholders will receive 0.4630 of a share of Webster common stock for each share of Sterling owned (the "Merger Consideration").

3. On June 11, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Sterling and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Sterling shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.    This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.    This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8.    Plaintiff is, and has been at all times relevant hereto, the owner of Sterling shares.

9.    Defendant Sterling is incorporated under the laws of Delaware and has its principal executive offices located at Two Blue Hill Plaza, Second Floor, Pearl River, New York 10965.  The Company's common stock trades on the New York Stock Exchange under the symbol "STL."

10.    Defendant Jack Kopnisky ("Kopnisky") is and has been the Chief Executive Officer ("CEO"), President and a director of Sterling at all times during the relevant time period.

11.    Defendant Richard O'Toole ("O'Toole") is and has been the Chairman of the board of Sterling at all times during the relevant time period.

12. Defendant John P. Cahill ("Cahill") is and has been a director of Sterling at all times during the relevant time period.

13. Defendant Navy E. Djonovic ("Djonovic") is and has been a director of Sterling at all times during the relevant time period.

14. Defendant Fernando Ferrer ("Ferrer is and has been a director of Sterling at all times during the relevant time period.

15. Defendant Robert Giambrone ("Giambrone") is and has been a director of Sterling at all times during the relevant time period.

16. Defendant Mona Aboelnaga Kanaan ("Kanaan") is and has been a director of Sterling at all times during the relevant time period.

17. Defendant James J. Landy ("Landy") is and has been a director of Sterling at all times during the relevant time period.

18. Defendant Maureen Mitchell ("Mitchell") is and has been a director of Sterling at all times during the relevant time period.

19. Defendant Patricia M. Nazemetz ("Nazemetz") is and has been a director of Sterling at all times during the relevant time period.

20. Defendant Ralph F. Palleschi ("Palleschi") is and has been a director of Sterling at all times during the relevant time period.

21. Defendant William E. Whiston ("Whiston") is and has been a director of Sterling at all times during the relevant time period.

22. Defendants Kopnisky, O'Toole, Cahill, Djonovic, Ferrer, Girambron, Kanaan, Landy, Mitchell, Nazemetz, Palleschi, and Whiston are collectively referred to herein as the "Individual Defendants."

23.     The Individual Defendants, along with Defendant Sterling, are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

24.     Sterling specializes in the delivery of services and solutions to business owners, their families and consumers within the communities it serves through teams of dedicated and experienced relationship managers. Sterling National Bank offers a complete line of commercial, business, and consumer banking products and services.

**The Company Announces the Proposed Transaction**

25.     On April 19, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> WATERBURY, Conn. and PEARL RIVER, New York, April 19, 2021 (GLOBE NEWSWIRE) -- Webster Financial Corporation (NYSE: WBS) ("Webster") and Sterling Bancorp (NYSE: STL) ("Sterling") jointly announced today that their boards of directors have approved by unanimous vote a definitive agreement under which the two companies will combine in an all-stock merger of equals transaction with a total market value of approximately $10.3 billion.
>
> Under the terms of the agreement, Sterling will merge into Webster, and Sterling's shareholders will receive a fixed exchange ratio of 0.463 of a Webster share for each share of Sterling stock they own. Following the closing of the transaction, Webster shareholders will own approximately 50.4% of the combined company, and Sterling shareholders will own approximately 49.6%, on a fully diluted basis.
>
> The combined company will retain the Webster name, establish a new corporate headquarters in Stamford, CT, and have a continued multi-campus presence in the greater New York City area and Waterbury, CT.
>
> The pro forma company will be a powerhouse player in the Northeast with highly differentiated businesses in commercial banking, health savings and consumer and digital banking. Enhanced scale will unlock growth and value across each of these business lines.

5

- Commercial banking unlocks a diversified, multi-billion dollar opportunity to grow regional and national C&I, commercial real estate and Sponsor & Specialty loans through expanding existing relationships and new clients.

- HSA Bank, a division of Webster Bank and a top national provider of health savings accounts nationally, will benefit from increased capacity for growth and investment.

- Consumer, small business and direct banking will benefit from local density and increased investment in digital capabilities.

*        *        *

**Strategic Benefits of the Proposed Merger**

- Powerhouse Northeast Bank: Combined $63 billion in assets, $52 billion in deposits, and $42 billion in loans provides scale to deliver best-in-class financial performance and drive value for all stakeholders.

- Highly Differentiated Businesses: Webster and Sterling have complementary businesses and strong franchises in commercial, health savings and consumer and digital banking. Relationship- and expertise-based commercial banking and a local presence are enhanced by national reach in both lending and deposit gathering, resulting in sustainable high performance and competitive advantages.

- Significant Loan Growth Potential: The combined company's Northeast footprint is the most densely populated in the nation. Through diversification and scale, commercial banking will unlock opportunities to grow relationships with existing clients and enhance operating leverage, particularly in commercial lending. Webster and Sterling's niche national lending platforms contribute further growth, risk-adjusted returns and diversification.

- Best-in-Class Deposit Franchise: Together, Webster and Sterling are strongly positioned with a low-cost, long-duration deposit base. The pro forma company will have 200+ financial centers in the Northeast market. In addition, it will benefit from the ability to more aggressively grow and invest in HSA Bank, a top health savings platform nationally with 12% market share and strong growth characteristics.

**Financial Benefits of the Proposed Merger**

- Exceptional Profitability: The combined company is projected to generate a ROAA of 1.40% and ROATCE of 17% – among the strongest return profiles nationally.

- Enhanced Revenue Growth Potential: Scale and diversification unlock compelling revenue growth opportunities by expanding selected commercial lending portfolios, aggressively growing HSA Bank, and enhancing digital banking offerings.

- Strong GAAP EPS Accretion to Both Companies' Shareholders: >20% to Webster, >10% to Sterling, after realizing $120 million of projected cost savings.

- Significant Excess Capital Generation: The combined company is projected to generate $440 million per year, or ~$2.50 per share, of excess capital after organic growth and dividends, available for both capital investments and share repurchases.

## Governance and Leadership

Reflecting the equal contribution both partners bring to the combined company, the board and executive management team will draw from both sides:

- Jack L. Kopnisky, President & CEO of Sterling, will serve as Executive Chairman of the combined company for 24 months after closing, and will continue in a consulting capacity for an additional 12 months thereafter.

- John R. Ciulla, Chairman, President & CEO of Webster, will serve as President & CEO of the combined company until 24 months after closing, at which time he will become Chairman, President & CEO.

- The combined company's executive management team will be comprised of executives from both companies, including Luis Massiani as Chief Operating Officer and Glenn I. MacInnes as Chief Financial Officer.

- The board of directors of the combined company will have 15 directors, consisting of eight directors from Webster and seven directors from Sterling, including Jack L. Kopnisky and John R. Ciulla.

- William L. Atwell, current lead independent director of Webster, will serve as lead independent director for 24 months after closing, after which the Lead Independent Director will be a legacy Sterling director.

## Timing and Approvals

The merger is expected to close in the fourth quarter of 2021, subject to satisfaction of customary closing conditions, including receipt of required regulatory approvals and approval by the shareholders of each company.

## Advisors

J.P. Morgan Securities, LLC acted as lead financial advisor to Webster and rendered a fairness opinion to its board of directors. Piper Sandler & Co. also rendered a fairness opinion to Webster's board. Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Webster.

Citigroup Global Markets Inc. acted as lead financial advisor to Sterling and rendered a fairness opinion to its board of directors. Keefe, Bruyette & Woods, Inc. also rendered a fairness opinion to Sterling's board. Squire Patton Boggs (US) LLP is serving as legal counsel to Sterling.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

26.     On June 11, 2021, the Company authorized the filing of the Registration Statement with the SEC.   The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

27.     Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

28.     The Registration Statement contains projections prepared by the Company's and Webster's management concerning the Proposed Transaction, but fails to provide material information concerning such.

29.     Specifically, with respect to the Company's projections, the Company must disclose: (i) the extrapolated financial projections for Sterling for the years 2023 through 2026;

(ii) the basis for selecting estimated long-term annual net income growth rates of 5.0% from 2023 through 2026 and estimated long-term asset growth rates of 3.0% from 2023 through 2026.

30.    Specifically, with respect to Webster's projections, the Company must disclose: (i) the extrapolated financial projections for Webster for the years 2023 through 2026; (ii) the basis for selecting estimated long-term annual net income growth rates of 5.0% from 2023 through 2025 and 3.0% for 2026 and estimated long-term asset growth rates of 3.0% from 2023 through 2026.

31.    Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
<u>Misrepresentations or Omissions Regarding the Financial Opinions</u>**

32.    The Registration Statement contains the financial analyses and opinion of Citigroup Global Markets Inc. ("Citigroup") and Keefe, Bruyette & Woods, Inc. ("KBW") concerning the Proposed Transaction, but fails to provide material information concerning such.

33.    With respect to Citigroup's *Selected Public Companies Analysis* for Sterling, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

34.    With respect to Citigroup's *Dividend Discount Analysis* for Sterling, the Registration Statement fails to disclose: (i) the Company's terminal values; (ii) the inputs and assumptions underlying Citigroup's use of the range of terminal price-to-earnings ratio multiples

of 10.0x to 13.6x; and (iii) the inputs and assumptions underlying Citigroup's use of the discount

rates ranging from 12.9% to 14.6%.

35.     With respect to Citigroup's *Selected Public Companies Analysis* for Webster, the

Registration Statement fails to disclose the individual multiples and metrics for the companies

observed by Citigroup in the analysis.

36.     With respect to Citigroup's *Dividend Discount Analysis* for Webster, the

Registration Statement fails to disclose: (i) the Webster's terminal values; (ii) the inputs and

assumptions underlying Citigroup's use of the range of terminal price-to-earnings ratio multiples

of 13.2x to 17.8x; and (iii) the inputs and assumptions underlying Citigroup's use of the discount

rates ranging from 11.1% to 12.5%.

37.     With respect to Citigroup's *Price Targets Analysis* for Sterling and Webster, the

Registration Statement fails to disclose the price targets observed, as well as the sources thereof.

38.     With respect to KBW's *Selected Companies Analysis* for Webster, the

Registration Statement fails to disclose the individual multiples and metrics for the companies

observed in the analysis.

39.     With respect to KBW's *Sterling Dividend Discount Model Analysis*, the

Registration Statement fails to disclose: (i) the Company's terminal values; (ii) the inputs and

assumptions underlying KBW's use of the range of multiples of 10.0x to 14.0x; and (iii) the

inputs and assumptions underlying KBW's use of the discount rates ranging from 12.5% to

14.5%.

40.     With respect to KBW's *Webster Dividend Discount Model Analysis*, the

Registration Statement fails to disclose: (i) Webster's terminal values; (ii) the inputs and

assumptions underlying KBW's use of the range of multiples of 12.0x to 16.0x; and (iii) the inputs and assumptions underlying KBW's use of the discount rates ranging from 12.5% to 14.5.

41.     With respect to KBW's *Pro Forma Dividend Discount Model Analysis*, the Registration Statement fails to disclose: (i) the terminal values for the pro forma combined entity; (ii) the inputs and assumptions underlying KBW's use of the range of multiples of 11.0x to 15.0x; and (iii) the inputs and assumptions underlying KBW's use of the discount rates ranging from 12.5% to 14.5%.

42.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

43.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the

use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

48.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

49.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

50.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

52.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

53.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

55.     The Individual Defendants acted as controlling persons of Sterling within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of Sterling, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in

the Registration statement filed with the SEC, they had the power to influence and control and

did influence and control, directly or indirectly, the decision making of the Company, including

the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

56.     Each of the Individual Defendants was provided with, or had unlimited access to,

copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the

issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The Registration Statement at issue contains

the unanimous recommendation of each of the Individual Defendants to approve the Proposed

Transaction. They were thus directly involved in preparing this document.

58.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states

all material facts required in it or necessary to make the statements contained therein not misleading;

      C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

      D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 25, 2021

                        Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*

16